JOURNAL ENTRY and OPINION
The State of Ohio appeals from the trial court's granting the defendant's motion to suppress. We find no merit to the appeal and affirm.
Antoine Robinson was indicted on six counts that included carrying a concealed weapon, possession of PCP, preparation of drugs for sale, possession of criminal tools, and two counts of having a weapon while under disability. All of the charges, except the carrying a concealed weapon charge, contained a firearm specification.
Robinson filed a motion to suppress evidence, claiming that the firearm, drugs, and money were confiscated pursuant to an illegal search. A hearing was conducted and the following evidence was presented.
Detective Brian Heffernan testified that on September 5, 2000, he was working the midnight shift. At approximately 2:50 a.m., he pulled into a parking lot at the intersection of East 40th and Community College, an area he stated was notorious for drug sales. He saw a white vehicle with the driver's door open, the engine running, the headlights on, and the interior lit by the dome light. Huddled behind the vehicle was a large male wearing a leather coat and a Big Apple baseball cap and a small, thin female with dirty blonde hair. Both of the individuals were looking down at the male's hands. Heffernan believed that a drug sale was about to take place, although he did not observe any sort of exchange. (TR. 12). Fearful of being seen in the marked police car, Heffernan parked his car across the street and waited for the car to leave the parking lot. He was concerned that a foot chase would ensue if he approached the individuals outside of the car.
Heffernan followed the vehicle with the intent of stopping the car to question the driver regarding the suspected drug deal. He attempted to get the license plate number so that he could identify the driver of the car prior to stopping it. However, the car's temporary license plate, which was wedged between the window and the rear deck, was partially obscured. Instead of stopping the car at that point, he continued to follow the car until it was in a well-lit area that he was familiar with in case there was a problem. He radioed for back-up and stopped the car at East 40th and Chester Avenue.
Heffernan testified that he recognized the driver, Antoine Robinson, as the man he saw in the parking lot. However, he did not recognize the passenger, Jasper Windchester. The officer asked Robinson what he was doing with the white woman in the parking lot. Robinson denied being with a white woman and claimed to have been in the parking lot with his girlfriend. When Robinson failed to provide a driver's license, Heffernan asked him to get out of the car and frisked him for weapons. Back-up officers then escorted Robinson to their zone car to check the validity of his driver's license.
When Robinson exited the car, Heffernan noticed a pack of cigarettes on the floor in front of the gas pedal. Based on his experience, he was aware that drugs are frequently concealed between the paper and cellophane of cigarette packs. Upon observing the uncrushed pack of cigarettes, he knelt down to retrieve it and saw a .38 revolver under the driver's seat. Robinson and Windchester were then arrested for carrying a concealed weapon. After the weapon was discovered, it was determined that Robinson did have a valid driver's license.
An inventory search of the vehicle revealed approximately $8,400 in the glove compartment and a vial of PCP under the passenger seat.
Officer Mauer testified that he checked the status of Robinson's driver's license. When the handgun was discovered, he overheard Robinson trying to convince Windchester to tell them it was Windchester's gun. Mauer also heard him tell Windchester, We're fucked when Heffernan found the money in the glove compartment.
Based on the above evidence, the trial court granted the motion to suppress. The court found that the stop of the vehicle for purposes of investigating the obscured license plate was valid. The court also found that the request for Robinson's driver's license was permissible and placing him in the squad car to check the status of his driver's license was also permissible.
The trial court, however, found that a search of the car was not permissible because Robinson had not been placed under arrest and the officer's suspicions of a drug transaction were not sufficient to justify a search of the vehicle at that juncture. The court also found that the pack of cigarettes did not give the officer authority to go into the vehicle.
 * * * I find nothing from the facts that suggest this pack of cigarettes was clearly contraband that was in plain view, but even if it were something which he was entitled to obtain, I find that the manner in which he obtained that cigarette pack by going down to his knees at the side of the car was unnecessary, and I believe that the behavior of Lieutenant Heffernan was calculated to obtain for him a better view of items that might be under the seat of this vehicle.
 The discovery of the weapon was not obtained by probable cause. It was not obtained by a search incident to arrest. It was not necessitated by exigent circumstances, and therefore, the discovery of the weapon and the resulting search of the vehicle was improper.
(TR. at 112).
The State appeals and asserts one assignment of error.
 I. WHETHER WHEN, DURING THE COURSE OF A LAWFUL STOP OF A MOTOR VEHICLE TO INVESTIGATE THE DRIVER'S SUSPECTED CRIMINAL ACTIVITY AND FOR A TRAFFIC VIOLATION, THE POLICE OBSERVE AN ITEM THAT THEY HAVE PROBABLE CAUSE TO ASSOCIATE WITH CRIMINAL ACTIVITY, THE POLICE MAY SEIZE THE ITEM, AND MAY ALSO LAWFULLY SEIZE A FIREARM THAT IS INADVERTENTLY DISCOVERED UNDER A SEAT IN THE PROCESS. A SEARCH OF THE VEHICLE AND SEIZURE OF DRUGS AND CURRENCY SUBSEQUENT TO THE DRIVER'S ARREST FOR CARRYING A CONCEALED WEAPON IS THEN A PROPERLY CONDUCTED INVENTORY SEARCH.
The scope of our review regarding a motion to suppress was set forth by this court in State v. Curry (1994), 95 Ohio App.3d 93,96, as follows:
 In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. State v. Clay (1973), 34 Ohio St.2d 250, 63 Ohio Op.2d 391, 298 N.E.2d 137. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See State v. Schiebel (1990), 55 Ohio St.3d 71, 564 N.E.2d 54. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. State v. Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908.
The trial court in the instant case found the initial stop of the vehicle was proper due to the obscured license plate. We likewise find that this was proper even though the officer testified that his real motivation in stopping the vehicle was to further investigate the activity that occurred in the parking lot. As the Supreme Court held in Dayton v. Erikson (1996), 76 Ohio St.3d 3, syllabus, when a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under theFourth Amendment to the United States Constitution, even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity.
The trial court also found nothing wrong with the officer removing Robinson from the vehicle and patting him down for weapons prior to placing him in the police cruiser to check the validity of his driver's license. We also find that the officers had probable cause to detain Robinson in order to check the validity of his license because he did not have one on his person. The pat down prior to placing him in the police vehicle was for safety purposes and, therefore, proper. Terry v. Ohio (1968), 392 U.S. 1.
The trial court, however, found that the search of the vehicle based on the officer's discovering the cigarette pack near the gas pedal was not proper because the cigarette pack was not immediately recognizable as contraband. This was not a search incident to arrest because the officer admitted that Robinson was not placed under arrest until the weapon was discovered under the driver's seat.
In State v. Davie (1993), 86 Ohio App.3d 460, 464, this court held as follows, regarding the plain view exception to a warrantless search:
 The plain view doctrine is an exception to the Fourth Amendment requirement that a judicial warrant be issued before a search of a citizen's property is undertaken by the government. The plain view exception authorizes the seizure of an illegal object or contraband that is immediately recognizable as such when it is in plain view of the official without a necessity for a search warrant. It does not authorize the search of a container of which the officer cannot readily determine the contents and which may have items that are not necessarily contraband.
In the instant case, we agree with the trial court's finding that the cigarette pack did not constitute readily determinable contraband. Although we agree with the State that the criminal nature of the object may be based on the officer's probable cause to associate the item with criminal activity, we find that in the cases cited by the State, the officers had a specific reason to link the item to a crime, not merely a general observation.
In Texas v. Brown (1983), 460 U.S. 730, the officer not only saw a deflated green balloon knotted a half inch from the top, he also could see into the open glove compartment where he observed several plastic vials containing a white powdery substance along with an open bag of party balloons.
In U.S. v. Cortez (1981), 449 U.S. 411, the officers properly stopped a vehicle containing illegal aliens after ascertaining that a person wearing a shoe with a letter V on the bottom was leading groups of illegal aliens over the border. Based on the number of aliens, the officers concluded the vehicle was a van or truck and that it would take a certain amount of time to get to the border from the spot of the footprints. The officers deducted from this evidence that a vehicle, which had passed them twice going in different directions, met this criteria.
In State v. Waddy (1992), 63 Ohio St.3d 424, the officers properly retrieved items not listed on a search warrant because they contained the same red fibers found at the crime scene.
In the instant case, the fact that the detective observed Robinson with a female, in an area known for drug activity, looking down at his hands, did not provide a sufficient basis to believe that the pack of cigarettes contained drugs. The detective admitted he did not see any drugs or money exchange hands, nor was there evidence of any powdery substance or suspected residue in or around the cigarette pack.
The trial court went on to find that, even if the cigarette pack did constitute contraband, the manner in which the officer retrieved the package, by kneeling down, was calculated to obtain for him a better view of items that might be under the seat of this vehicle. We must defer to the trial court's factual findings regarding whether the manner in which the pack was retrieved was unreasonable. Because the trial court found that the gun would not have been in plain view except for the officer's exaggerated manner in retrieving the cigarettes, we find the gun was seized as a result of an unconstitutional search.
The trial court did not err by suppressing the evidence. The State's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, P.J., CONCURS TERRENCE O'DONNELL, J., DISSENTS